UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JIMEEN WIGGINS,

        Plaintiff,

       v.

PEOPLE INC.,

        Defendant.

21-CV-77-LJV
DECISION & ORDER

---

On January 15, 2021, the plaintiff, Jimeen Wiggins, commenced this action under the Americans with Disabilities Act of 1990 ("ADA").  Docket Item 1.  About six months later, Wiggins amended her complaint with the assistance of pro bono counsel appointed for that limited purpose.  Docket Item 18; *see* Docket Item 19.

In July 2022, the defendant, People Inc., moved for summary judgment on several grounds, including res judicata.  Docket Item 30 (notice of motion); *see* Docket Item 34 (memorandum of law).  After Wiggins responded, Docket Items 37, 39, and 40, People Inc. replied, Docket Item 42.  Wiggins later moved for People Inc. "to release finances to [her] as soon as possible" in compensation for her claims, Docket Item 44 at 1, and for this Court to "[b]ring [her] case to a closure," Docket Item 45 at 1.

For the reasons that follow, this Court grants People Inc.'s motion for summary judgment.  Wiggins's motion to release finances and to bring the case to closure therefore are denied as moot.

### BACKGROUND[1]

In August 2016, Wiggins filed a verified complaint with the New York State Division of Human Rights ("DHR"), alleging that People Inc. had discriminated against her.  Docket Item 33 ¶ 73.  Among other things, Wiggins alleged that on January 4, 2016, People Inc. had wrongfully terminated her employment because of her disabilities, including "problems with [her] left foot (plantar fasciitis, arthritis) and stress/depression."  Docket Item 30-11 (DHR complaint) at 2-3.[2]

On July 18, 2018, and October 3, 2018, Administrative Law Judge ("ALJ") Martin Erazo, Jr., held a public hearing addressing Wiggins's complaint.  Docket Item 33 ¶ 75. On June 28, 2019, ALJ Erazo issued his recommended findings of fact, opinion, and decision and order, finding that People Inc. had "presented a legitimate, non-discriminatory reason for placing [Wiggins] on unpaid administrative leave" and "for terminating [her] employment."  Docket Item 33 ¶ 76; *see* Docket Item 31-11 (Erazo decision).  After giving both sides an opportunity to object and after reviewing the objections, DHR adopted ALJ Erazo's findings and issued a final order dismissing Wiggins's complaint.  Docket Item 33 ¶ 77; *see* Docket Item 31-12 (DHR notice and final order dated October 3, 2019).

---

[1] On a motion for summary judgment, the Court construes the facts in the light most favorable to the non-moving party.  *See Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  Unless otherwise noted, the following facts are those that Wiggins does not contest in People Inc.'s statement of undisputed facts, Docket Item 33.  Any disputed facts are resolved in Wiggins's favor.

[2] Page numbers in docket citations refer to ECF pagination.

The next month, Wiggins filed a verified petition under Executive Law § 298 in New York State Supreme Court, Erie County, seeking to vacate DHR's determination. Docket Item 33 ¶ 78; *see* Docket Item 31-13 (state court petition). DHR and People Inc. then moved to dismiss, and on September 28, 2020, New York State Supreme Court Justice Catherine Nugent Panepinto granted those motions. *See* Docket Item 31-14 (Justice Panepinto's email to parties regarding decision). More specifically, Justice Panepinto explained:

> Unfortunately for [Wiggins], she failed to properly serve the verified petition and to name a necessary party. In addition, as addressed in the papers, the election of remedies doctrine bars a plenary action. [Wiggins] should be comforted by the fact that she did properly pursue her issues with the New York State Division of Human Rights, where a public hearing was held on July 18, 2018[,] and October 3, 2018, after which the Division's Commissioner issued an [o]rder dismissing the allegations of disability discrimination. Accordingly, [Wiggins's] [p]etition seeking lost wages and other damages is hereby [d]ismissed. Respondents are hereby directed to submit the appropriate [o]rders on [n]otice.

*Id.* A month later, on October 28, 2020, Justice Panepinto entered an order dismissing Wiggins's petition "with prejudice." Docket Item 33 ¶ 79; *see* Docket Item 31-15 (order).

On January 15, 2021, Wiggins filed her complaint in this Court. Docket Item 1. The Court appointed pro bono counsel for the limited purpose of assisting Wiggins in amending her complaint, *see* Docket Item 16, and counsel filed an amended complaint on June 25, 2021, Docket Item 18. The amended complaint, like the DHR complaint and state court petition, alleges that People Inc. violated Wiggins's rights by failing to accommodate her in light of her disabilities and ultimately by terminating her employment. *See id.*

## **LEGAL PRINCIPLES**

Under Federal Rule of Civil Procedure 56, a court appropriately grants summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The movant"—that is, the party seeking summary judgment—"has the burden of showing that there is no genuine issue of fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The movant may satisfy its burden by relying on evidence in the record, "including depositions, documents, . . . [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the non[-]moving party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)); *see* Fed. R. Civ. P. 56(c)(1)(B).

Once the movant has satisfied its initial burden, "the non[-]moving party must come forward with specific facts showing that there is a genuine issue for trial"—that is, that a "rational trier of fact [could] find for the non-moving party" on the "record taken as a whole." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations, emphasis, and internal quotation marks omitted).  If the non-moving party fails to do so, the court will grant summary judgment.  *See Celotex*, 477 U.S. at 322-23; Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

In deciding a motion for summary judgment, "the [C]ourt must view the evidence in the record in the light most favorable to the non-moving party" and "draw[] all

4

reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 465-66 (2d Cir. 2001). But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996); *see also Matsushita*, 475 U.S. at 586 (explaining that when moving party has met its burden, non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts" to defeat summary judgment).

The party opposing a motion for summary judgment must "properly support an[y] assertion[s] of fact" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A), (e); *Celotex*, 477 U.S. at 324. And "[w]hile evidence produced by the party opposing a summary judgment motion need not be in a form that would be admissible at trial, its content must nonetheless be admissible." *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 675-76 (S.D.N.Y. 2012) (internal citations and internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(4) (requiring that "[a]n affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").

## DISCUSSION[3]

### I.    RES JUDICATA

People Inc. first argues that res judicata bars Wiggins's ADA claims because Justice Panepinto dismissed Wiggins's state law discrimination claims with prejudice. *See* Docket Item 34 at 10-13.

Res judicata—or claim preclusion—"holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010) (quoting *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 284 (2d Cir. 2000)).  To establish its entitlement to a judgment based on res judicata, "a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiff[] or those in privity with [her]; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan*, 214 F.3d at 285.  Res judicata is a "flexible doctrine[]" that should not be "mechanically applied." *United States v. E. River Hous. Corp.*, 90 F. Supp. 3d 118, 141 (S.D.N.Y. 2015) (citation omitted).

Additionally, the "the full faith and credit statute . . . provides in pertinent part that '[t]he . . . judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State.'" *Joseph v. Athanasopoulos*, 648 F.3d 58, 61 (2d Cir. 2011) (quoting 28 U.S.C. § 1738).  Thus, "in determining the res judicata effect of a state court

---

[3] The Court assumes the reader's familiarity with the factual background and will refer only to those facts necessary to explain its decision.

judgment on a plaintiff's federal statutory claims, the federal court must give that judgment the same preclusive effect as would the courts of the state rendering that judgment." *Id.* at 62 (italics omitted).

"New York law has adopted a 'transactional approach' to claim preclusion." *McKithen v. Brown*, 481 F.3d 89, 104 (2d Cir. 2007). The "transactional approach dictates that once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transaction[s] are barred.'" *Russo v. City of New York*, 705 F. App'x 38, 39 (2d Cir. 2017) (summary order) (alterations, citations, and internal quotation marks omitted). So a prior judgment in a New York State court "precludes a party from litigating a claim [in federal court] where a judgment on the merits exists from a prior action between the same parties or their privies involving the same subject matter, even when the claim is based upon different legal theories or seeks different or additional relief." *Dekom v. Fannie Mae*, 846 F. App'x 14, 19 (2d Cir. 2021) (summary order) (alterations, citations, and internal quotation marks omitted).

Here, there is no question that the state court action involved Wiggins and that the claims in the state court action arose out of the same set of facts as Wiggins's claims here. *Compare* Docket Item 18 (amended complaint) (alleging that People Inc. failed to accommodate Wiggins's disabilities and wrongfully terminated her), *with* Docket Item 31-13 (verified state court petition) (seeking "lost wages and pay for pain and suffering from [the] time of being sent home [from work at People Inc. in] Dec. 2015" and attaching documents related to her disabilities and employment at People Inc.). So the questions before this Court boil down to (1) whether Wiggins could have brought her ADA claims in her state court suit, and (2) whether a New York State court

7

would treat Justice Panepinto's dismissal as a final judgment on the merits with preclusive effect.

### A.      Ability to Raise ADA Claims in State Court Suit

The first question is whether Wiggins's ADA claims "were, or could have been, raised in the prior action." *Monahan*, 214 F.3d at 285.  A plaintiff seeking to bring an ADA claim must first exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission ("EEOC").  *See Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018).  Wiggins did that here.  But the EEOC did not issue a decision on the charge and give Wiggins notice of her right to sue until October 20, 2020, *see* Docket Item 18-3, about a month after Justice Panepinto issued her decision dismissing Wiggins's state court action, *see* Docket Item 31-14.[4]  So at first glance, it might seem that Wiggins could not have brought her ADA claims in her state court case.

Nonetheless, the Second Circuit has applied res judicata in similar cases, finding that a plaintiff could have—for example—sought a stay in the state court action until the EEOC issued its decision.  *See Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 40-41 (2d Cir. 1992); *see also Barnes v. Royal Health Care LLC*, 357 F. App'x 375, 377 (2d Cir. 2009) (summary order).  In *Woods*, the plaintiff argued that her Title VII claim should be allowed to proceed because at the time she commenced her earlier lawsuit alleging claims under the Labor Management Relations Act ("LMRA"), she had not yet

---

[4] Wiggins had 90 days from the date of the EEOC notice to "file a lawsuit against [People Inc.] under federal law based on th[at] charge in federal or state court."  Docket Item 18-3.

exhausted her Title VII claim. *See* 972 F.2d at 38-41. The Second Circuit rejected that argument, finding that the plaintiff "had two available courses she could have followed in order to avoid the sting of res judicata." *Id.* at 41. "As a first alternative," the court explained, the plaintiff "could have filed her LMRA claim and then sought a stay in the district court pending the outcome of her Title VII administrative proceedings." *Id.* (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 465 (1975)). And "[o]nce administrative review had been completed, [she] could have then joined her Title VII claim with her LMRA claim by amending the complaint in the LMRA suit." *Id.* Alternatively, the court noted, the plaintiff "could have filed the LMRA action, sought a right to sue notice on her Title VII claim from the EEOC after 180 days, and then amended the complaint in her LMRA suit to include the Title VII claim." *Id.* (internal citation omitted).

The fact that Wiggins is proceeding pro se gives this Court some pause in applying that analysis to her. But the Second Circuit applied the same analysis in a subsequent case where the plaintiff, like Wiggins, proceeded pro se. *See Barnes*, 357 F. App'x at 377 (rejecting plaintiff's argument that res judicata did not apply because "his federal employment discrimination claims were unexhausted at the time he commenced his state court action" because plaintiff could have "(1) commenced his state court action and then stayed the proceedings pending the outcome of his Title VII EEOC charge; or (2) amended his state court complaint to include his Title VII claim once he received a right-to-sue letter from the EEOC").

So the same analysis applies to Wiggins's ADA claim here. She could have either sought a stay in her state court case or requested a notice of right to sue from the

9

EEOC.[5]  Thus, the Court finds that Wiggins could have brought her ADA claims in her state court case.

### B.    Final Judgment on the Merits

The harder question is whether Justice Panepinto's decision constituted a final judgment on the merits for res judicata purposes.  Justice Panepinto dismissed Wiggins's petition for three reasons: (1) because Wiggins "failed to properly serve the verified petition," (2) because Wiggins failed "to name a necessary party," and (3) because "the election[-]of[-]remedies doctrine bar[red] a plenary action."  Docket Item 31-14 at 2.  The Court will briefly address the first two reasons before turning to the third.

### 1.    State Court Dismissal Based on Failure to Properly Serve the Petition and Failure to Name a Necessary Party

Dismissals "based upon failure to join a necessary party and improper service are not final decisions on the merits for res judicata purposes."  *Troeger v. Ellenville Cent. Sch. Dist.*, 2016 WL 5107119, at *7 (N.D.N.Y. Sept. 20, 2016); *see Hanrahan v. Riverhead Nursing Home*, 592 F.3d 367, 369 (2d Cir. 2010) (explaining that dismissal for failure to join necessary party is not a dismissal on the merits for res judicata purposes); *Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 373 n.3 (2d Cir. 1978) (citation omitted) ("A dismissal for failure of service of process, of course, has no

---

[5] The Court acknowledges that Wiggins may not have understood that she had either of those options or the consequence of failing to take them.  But as noted above, the Second Circuit has applied res judicata in a very similar case notwithstanding the plaintiff's pro se status.  *See Barnes*, 357 F. App'x at 377.

[r]es judicata effect.").  Therefore, those two reasons for dismissing Wiggins's claims do not trigger res judicata.

### 2.    State Court Dismissal Based on Election of Remedies

The dismissal under the election-of-remedies doctrine is a different story, however.  "Under New York's election[-]of[-]remedies doctrine, 'a person claiming to be aggrieved by an unlawful discriminatory practice may elect to seek redress in either an administrative or judicial forum where different rights and remedies may be pursued.'" *Wiercinski v. Mangia 57, Inc.*, 2010 WL 2681168, at *2 (E.D.N.Y. July 2, 2010) (quoting *Universal Packaging Corp. v. N.Y. State Div. of Hum. Rts.*, 270 A.D.2d 586, 587, 704 N.Y.S.2d 332, 333 (3d Dep't 2000)). "These remedies, however, are mutually exclusive, and '[o]nce a complainant elects the administrative forum by filing a complaint with the Division, a subsequent judicial action on the same complaint is generally barred.'" *Id.* (quoting *Legg v. Eastman Kodak Co.*, 248 A.D.2d 936, 937, 670 N.Y.S.2d 291, 292 (4th Dep't 1998)).

"The election-of-remedies bar is not limited to the precise claims brought in the administrative proceeding[] but extends to all claims arising out of the same events." *Id.* Thus, "[i]f substantially the same facts are involved, then the doctrine of election of remedies will bar any subsequent court proceedings.  The facts need not be perfectly identical, and merely adding some additional facts and/or re-labeling the claim will not prevent the application of the doctrine of election of remedies." *Id.* (quoting *Benjamin v. N.Y. City Dep't of Health,* 851 N.Y.S.2d 68 (Table), 2007 WL 3226958, at *5 (Sup. Ct. N.Y. Cnty. Oct. 23, 2007)).  And the election-of-remedies "bar applies even when the

11

complainant is uncounseled and ignorant of the effects of the election of an administrative forum."  *Id.*

Here, Wiggins elected to bring her action before the DHR.  That choice in and of itself does not bar her federal claims under the ADA.  *See, e.g., Guerrero Toro v. NorthStar Demolition & Remediation*, 366 F. Supp. 3d 449, 474-75 (W.D.N.Y. 2019) (considering merits of ADA claims but finding that New York State Human Rights Law claims were barred by election of remedies doctrine).  Instead, the question is whether the landscape changed once Wiggins opted to "pursue[] state judicial remedies."  *See Kirkland v. City of Peekskill*, 828 F.2d 104, 109 (2d Cir. 1987).  More specifically, did Justice Panepinto's dismissal of Wiggins's state case trigger res judicata with respect to Wiggins's federal discrimination claims?

As noted above, res judicata requires "a final judgment on the merits."  *See Bank of N.Y.*, 607 F.3d at 918 (quoting *Monahan*, 214 F.3d at 284).  But "it is worth noting that the phrases 'final judgment' and 'on the merits' are both misnomers."  *Byrd v. Town of DeWitt*, 698 F. Supp. 3d 379, 390 (N.D.N.Y. 2023).  Rather, "these phrases are just shorthand ways of describing judicial determinations that carry a preclusive effect on 'successive' or 'subsequent' litigation."  *Id.* (quoting *Kassenoff v. Kassenoff*, 2023 WL 2648844, at *4 (S.D.N.Y. Mar. 27, 2023)).

The parties have not cited—nor has this Court been able to find—any decision addressing the precise question here: whether a dismissal with prejudice under the election-of-remedies doctrine is a final judgment on the merits that bars a plaintiff from bringing another lawsuit based on the same facts.  So the Court looks to the text of Justice Panepinto's decision and analogous caselaw for its analysis.

12

Justice Panepinto explicitly stated that her decision was "with prejudice."  Docket Item 31-15 at 2.  The New York Court of Appeals has found that "[a] dismissal 'with prejudice' generally signifies that the court intended to dismiss the action 'on the merits,' that is, to bring the action to a final conclusion against the plaintiff."  *Yonkers Contracting Co., Inc. v. Port Auth. Trans-Hudson Corp.*, 93 N.Y.2d 375, 380, 712 N.E.2d 678, 681 (1999).  So that suggests that another New York court would not entertain a lawsuit based on the same facts and alleged injuries as those in the lawsuit that Justice Panepinto dismissed.

Moreover, "[t]he election[-]of[-]remedies bar is jurisdictional," *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011), and "while it might seem strange, the Supreme Court has held that 'principles of res judicata apply to jurisdictional determinations—both subject matter and personal,'" *Byrd*, 698 F. Supp. 3d at 393 (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982)).  So that too suggests that res judicata would apply to a dismissal based on the election-of-remedies doctrine.

That being said, in the somewhat analogous context of dismissals based on the statute of limitations,[6] the law "remains unsettled" as to whether a dismissal is a final judgment on the merits for res judicata purposes.  *See id* at 395.  In *Bray v. New York Life Ins.*, 851 F.2d 60 (2d Cir. 1988), the Second Circuit held that "[b]ecause New York treat[ed] a dismissal on statute of limitations grounds as a final judgment on the merits for res judicata purposes, [the plaintiff was] precluded from relitigating her sex and race

---

[6] Like the election-of-remedies doctrine, a dismissal based on the statute of limitations is with prejudice but does not address the underlying merits of the claims.

13

discrimination claims in federal court." *Id.* at 64 (italics omitted).  But the Second Circuit has since called that conclusion into question.  *See Joseph*, 648 F.3d at 67 (concluding that New York State "Court of Appeals ha[d] not 'squarely addressed' whether a New York court's judgment dismissing a case based on the expiration of a New York limitations period should have preclusive effect in another jurisdiction with a longer, unexpired limitations period").[7]  And in the wake of that uncertainty, some district courts have declined to apply res judicata to statute-of-limitations dismissals.  *See Byrd*, 698 F. Supp. 3d at 395; *King v. N.Y.C. Emps.' Ret. Sys.*, 2015 WL 4718004, at *22 (E.D.N.Y. Aug. 10, 2015).  That gives this Court significant pause.

Is the election-of-remedies doctrine like the statute of limitations in that it might bar a subsequent suit in state court but not federal court?  The answer is unclear. Because this is a close legal issue in an unsettled area of law, the Court declines to apply res judicata and will address the merits of Wiggins's claims.  *See Byrd*, 698 F. Supp. 3d at 395 (addressing merits of claims where res judicata issue was "unsettled"); *see also E. River Hous. Corp.*, 90 F. Supp. 3d at 141 (explaining that res judicata is a "flexible doctrine[]" that should not be "mechanically applied").  And the Court finds that regardless of whether Wiggins's claims are barred by res judicata, they could not succeed on the merits for the reasons explained below.

## II.   MERITS OF WIGGINS'S CLAIMS

### A.   ADA Claim

---

[7] "The Second Circuit tried to clarify this issue by certifying the question to the New York Court of Appeals.  But the New York Court of Appeals eventually declined to consider the certified question after the appellant in the federal case withdrew the appeal."  *Byrd*, 698 F. Supp. 3d at 395 (citations omitted).

Courts "analyze ADA claims under the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Thompson v. N.Y.C. Dep't of Prob.*, 348 F. App'x 643, 645 (2d Cir. 2009) (summary order) (citing *Reg'l Econ. Comm. Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 48 (2d Cir. 2002)). "A plaintiff alleging disability discrimination carries the initial burden of establishing a prima facie case." *Id.* (italics omitted) (citing *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869 (2d Cir. 1998)). "In order to establish a prima facie case, the plaintiff must show that: (1) the employer is subject to the ADA; (2) the plaintiff suffers from a disability as defined in the ADA; (3) she could perform the essential functions of her job with or without reasonable accommodation; and (4) she suffered an adverse employment action due to the disability." *Id.* (italics omitted) (citing *Ryan*, 135 F.3d at 869-70). "Once the plaintiff makes out a prima facie case, the burden of production shifts to the employer to provide a legitimate, nondiscriminatory reason for its decision." *Id.* (italics omitted) (citing *Reg'l Econ. Comm. Action Program,* 294 F.3d at 49). "If the employer meets that burden, the plaintiff must then prove that the employer's proffered reason was false and a pretext for discrimination." *Id.* (citing *Reg'l Econ. Comm. Action Program,* 294 F.3d at 49). Moreover, "the ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action." *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019).

Here, Wiggins alleges that People Inc. failed to provide her with a reasonable accommodation and then fired her because of that request.

### 1.    Reasonable Accommodation

"A reasonable accommodation can never involve the elimination of an essential function of a job." *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003). In other words, if a disability prevents someone from performing the essential functions of a job, an employer cannot be required to provide an accommodation that relieves the employee from any of those essential functions. *See id.*

Wiggins asked to return to work with the accommodation that she not be required to stand for more than 30 minutes at a time. *See* Docket Item 18 ¶¶ 57-60. But People Inc. says that Wiggins's requested accommodation "was incompatible with the essential functions of her job, including[] maintaining the physical agility and ability to meet the needs of clients with varying disabilities; lifting and transferring clients; and responding to regularly occurring emergency incidents, such as a client choking on food and behavioral incidents." Docket Item 34 at 22-23. In fact, Katherine Guas, the Benefits and Safety Manager for People Inc., submitted an affidavit stating that Guas had determined—based on conversations with Wiggins's supervisors—that People Inc. could not reasonably accommodate Wiggins's request. *See* Docket Item 31-8 ¶¶ 7-9. More specifically, Guas explained that Wiggins's position of "Primary Instructor" includes "arrival and dismissal duties, . . . attend[ing] to individual hygiene needs, and . . . perform[ing] lunch monitoring duties—all of which typically require standing for more than 30 minutes at a time." *Id.* ¶ 9.

Wiggins has not presented anything that might rebut the evidence that her requested accommodation would prevent her from performing the essential functions of her job. On the contrary, the job description Wiggins attached to her response supports People Inc.'s position. *See* Docket Item 37 at 82 (listing as minimum qualifications

16

"[a]bility to meet physical requirements of the position when performing the following: standing, walking, sitting, bending, stooping, squatting, kneeling[,] and climbing" and "[a]bility to lift and transfer individuals manually and mechanically as required by prescribed program/plan").

Moreover, although this Court is not bound by the DHR decision, the Court notes that ALJ Erazo reached the same conclusion after a full adversary hearing. *See* Docket Item 31-11 at 14 ("Respondent could not accommodate Complainant's medical restrictions because they interfered with the essential functions of her job. A primary instructor must maintain the physical agility and ability to meet the needs of clients with varying disabilities. A primary instructor must lift and transfer clients, monitor their needs and respond to emergency incidents that occur regularly, such as a client choking on food or other behavioral incidents."). And again, Wiggins has not presented any evidence to the contrary.

For all those reasons, the Court finds that People Inc. is entitled to summary judgment on Wiggins's reasonable accommodation claim.

### 2. Wrongful Termination and Retaliation Claim

The next question is whether Wiggins was terminated in retaliation for requesting the reasonable accommodation. Wiggins claims that People Inc. "retaliated against [her] by placing [her] on unpaid administrative leave, and subsequently terminating her for requesting a reasonable accommodation and for taking protected time off." Docket Item 18 ¶ 83. Although People Inc. "does not concede" that Wiggins has met her prima facie burden on her termination and retaliation claims, its argument focuses on

17

Wiggins's failure to rebut its proffered non-discriminatory reasons for termination. *See* Docket Item 34 at 16.

More specifically, People Inc. has presented evidence that it fired Wiggins not because of her request but because of "substantiated allegations that she mistreated" a client of People Inc. who had "profound intellectual disability, autism, and anxiety." Docket Item 34 at 16. A declaration from Britta Kelley—People Inc.'s Director of Employee Relations—indicates that in October 2015, People Inc. "received a report from a residential manager with Baker Victory Services, Kevin Jenkins," stating that Jenkins had "witnessed [Wiggins] screaming at an individual with profound intellectual disability, autism, anxiety and other disorders in an inappropriate manner, whom [Wiggins] was driving home from People Inc.'s day program." Docket Item 30-3 ¶ 12. People Inc. then assigned a Quality Improvement Investigator, Merja Kenola, to investigate the allegations. *Id.* ¶ 13.

Kelley's declaration attests that:

Kenola had worked in this capacity since approximately 2002, had prior training regarding investigative techniques and strategies, and periodically participated in continuing training programs. As part of her investigation, Kenola interviewed [Wiggins], the affected individual, Jenkins, and a second Baker Victory Services staff member who overheard the incident. Based on the interviews and other information available to her, Kenola determined that [Wiggins] had engaged in "Other Mistreatment." . . . Kenola completed her Investigative Report substantiating the allegations of mistreatment against [Wiggins] on November 20, 2015.

*Id.*; *see* Docket Item 31-7 (Declaration of Merja Kenola, detailing investigation and attaching report). Kelley further explains that "People Inc. takes any allegation of abuse or mistreatment of any individual whom it serves very seriously and does not tolerate such conduct among its employees." Docket Item 30-3 ¶ 27. Indeed, Wiggins "was one of seven similarly situated employees whom People Inc. discharged for substantiated

allegations of abuse or mistreatment in 2016." *Id.*; *see* Docket Item 30-9 (chart showing employees discharged for substantiated allegations of abuse or mistreatment in 2016).

In addition, People Inc. has offered evidence that Wiggins had "on-going attendance issues for which, less than a year earlier, [she] received probation and warning that further non-compliance could result in her termination."  Docket Item 34 at 16 (citing Docket Item 30-3 ¶¶ 20-24); *see* Docket Item 30-2 (Probationary Performance Memo due to time and attendance issues).  Indeed, "immediately preceding her termination, [Wiggins] had five unplanned call-in absences in less than two months, well exceeding the limit of two such absences per month or three per quarter, under the Policies and Procedures applicable to her program."  Docket Item 34 at 16; *see* Docket Item 30-2.

Moreover, People Inc. says that Wiggins did not raise her need for an accommodation until a meeting in December 2015 when People Inc. "review[ed] the findings of the Quality Insurance investigation and [Wiggins's] continuing attendance problems."[8]  Docket Item 30-3 ¶ 14; *see id.* ¶ 6.  In other words, by the time Wiggins raised her request for a reasonable accommodation, the Quality Insurance investigation already had been completed and her attendance issues were ongoing.

Although Wiggins asserts that the reports of her mistreating clients were "[l]ies" and "[d]efamation of character," she does not present any evidence of that beyond her bald assertions.  *See* Docket Item 37 at 6-7.  What is more, Wiggins admitted under oath at her DHR hearing that in October 2015 she was accused by a staff member of

---

[8] Wiggins previously took approximately three weeks of medical leave in 2015, but she then "returned to work with no restriction."  Docket Item 30-3 ¶¶ 5-6.

another agency of mistreating an individual and that both she and her accuser were

interviewed as part of People Inc.'s internal investigation:

> Q. You gave some testimony earlier about, there was an allegation of patient mistreatment against you. You recall that occurring sometime in -- on or around October 21st 2015?
>
> A. Around that time. Yes, sir. . . .
>
> Q. Was it your understanding that that matter was investigated by an investigator from People[] Inc.?
>
> A. Quality assurance met with me, yes. . . .
>
> Q. And you had an opportunity to tell her -- you know, your -- your side of the story, if you will, about the allegation of mistreatment; correct?
>
> A. Yes.

Docket Item 30-17 at 4-6.

Nor does or can Wiggins dispute that People Inc. received the report about her

conduct from Jenkins or that Kenola interviewed her and other witnesses and concluded

that the allegations were substantiated.  In fact, Wiggins admitted she had received a

copy of Kenola's report during the DHR investigation.  *Id.* at 6.  "And while it is possible

to dispute" the conclusions Kenola reached, "to do so would require [this C]ourt to 'sit as

a super-personnel department' to reexamine whether [Wiggins]'s performance was

really deficient, something that [the Second Circuit has] stated courts should not do."

*See Ghent v. Moore*, 324 F. App'x 55, 57 (2d Cir. 2009) (summary order) (citing *Stern v.*

*Trs. of Columbia Univ. in City of N.Y.*, 131 F.3d 305, 315 (2d Cir. 1997)).

Wiggins also does not dispute that she had recurring issues with time and

attendance.  In fact, she admits that her supervisor "would talk to [her] about [her]

attendance and write [her] up because" of absences.  *See* Docket Item 37 at 3.

Furthermore, she stated under oath at her DHR hearing that she "thought they

terminated [her] because of [her] time and attendance."  Docket Item 30-13 at 4.  So to the extent that Wiggins now says something different, that cannot create a genuine issue of material fact sufficient to overcome summary judgment.  *See Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014) ("[F]actual issues that a party creates by filing an affidavit crafted to oppose a summary judgment motion that contradicts that party's prior testimony are not 'genuine' issues for trial.").

In sum, Wiggins has not presented evidence upon which a reasonable jury could conclude by a preponderance of the evidence that her disability accommodation request was a but-for cause of People Inc.'s decision to fire her.  People Inc. therefore is entitled to summary judgment on Wiggins's ADA claim.

### B.   FMLA Claim

Claims under the Family Medical Leave Act ("FMLA") are subject to a two-year statute of limitations, or, if the violation is willful, a three-year limitations period.  29 U.S.C. § 2617(c)(1); *see Porter v. N.Y. Univ. Sch. of L.*, 392 F.3d 530, 531 (2d Cir. 2004).  Wiggins commenced this action on January 15, 2021, more than five years after the alleged FMLA violation.  *See* Docket Item 1.  And she has not offered any reason why this claim is not time-barred.  *See generally* Docket Item 37.  The Court therefore finds that People Inc. is entitled to summary judgment on this claim as well.

### CONCLUSION

For all those reasons, this Court GRANTS People Inc.'s motion for summary judgment, Docket Item 30.  Wiggins's motion to release finances and to bring the case

to closure, Docket Items 44 and 45, therefore are denied as moot.  The Clerk of Court shall enter judgment and close this case.

This Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore denies leave to appeal as a poor person.  *Coppedge v. United States*, 369 U.S. 438 (1962).  Wiggins must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 30 days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:   June 9, 2026
             Buffalo, New York

*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

22